**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000623
21-JUN-2019
08:03 AM**

NO. CAAP-18-0000623

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant, v.
KIMSON RUBEN, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-18-0000352)

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Reifurth and Hiraoka, JJ.)

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the July 13, 2018 Opinion and Order Granting Motion to Dismiss for De Minimis Violation (**Dismissal Order**) entered by the Circuit Court of the First Circuit (**Circuit Court**)[1] in favor of Defendant-Appellee, Kimson Ruben (**Ruben**).

Ruben was charged with Promoting a Dangerous Drug in the Third Degree in violation of Hawaii Revised Statutes (**HRS**) § 712-1243 (2014).[2] Prior to trial, Ruben filed a Motion to

---

[1]    The Honorable Todd W. Eddins presided.

[2]    HRS § 712-1243 provides:

　　　**§ 712-1243  Promoting a dangerous drug in the third degree.**  (1) A person commits the offense of promoting a
(continued...)

Dismiss for Deminimis [*sic*] Infraction (**Motion to Dismiss**), which the Circuit Court granted, dismissing the charge with prejudice. On appeal, the State requests that this court vacate the Dismissal Order and remand the case for trial.

I.     BACKGROUND

On March 7, 2018, by Felony Information, the State charged Ruben with having violated HRS § 712-1243 on or about November 16, 2017, by knowingly possessing methamphetamine.  On June 21, 2018, Ruben filed the Motion to Dismiss, reciting the following factual assertions:

> a.   That on November 16, 2017, [Ruben] allegedly was observed by HPD officer Doulgas Korenic to be possessing a glass pipe in his left hand and a lighter in his right hand;
> b.   That Officer Korenic allegedly observed [Ruben] place said pipe and lighter in a hat on the ground;
> c.   That Officer Korenic allegedly observed methamphetamine residue in said glass pipe;
> d.   Officer Korenic never observed [Ruben] lighting the pipe, placing it to his mouth or otherwise smoking from said glass pipe;
> e.   No other packets or evidence of methamphetamine were found on [Ruben];
> . . . .
> h.   The weight of the residue in the pipe was 0.010 grams;
> i.   No further testing was conducted to determine the actual quantity or percentage of methamphetamine in the residue[.]

Ruben asserted that the amount of methamphetamine residue recovered and the surrounding circumstances warranted dismissal of the charge as a *de minimis* infraction pursuant to

---

[2](...continued)
dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
   (2)   Promoting a dangerous drug in the third degree is a class C felony.

HRS § 702-236 (2014).[3]  In its memorandum in opposition to the Motion to Dismiss, the State recited the following factual assertions:

a. On November 16, 2017, [HPD] Officer Douglas Korenic (hereinafter "Officer Korenic") was making checks of Kauluwela Mall for park closure violations.

b. Officer Korenic from 15 feet observed [Ruben] sitting in a chair on the Ewa side of the narrow mall.

c. Officer Korenic observed in [Ruben]'s left hand a small clear glass cylindrical object with a bulbous end.

d. Officer Korenic observed a white powdery burnt residue inside the pipe.

e. Officer Korenic observed in [Ruben]'s right hand a red "BIC" lighter.

f. When Officer Korenic illuminated the area he observed [Ruben] attempt to conceal the pipe inside the hat on his lap.

. . . .

i. On November 20, 2017, HPD Criminalist Michelle Shinsato analyzed the substance found within the pipe and determined it contained methamphetamine and that it had a net weight of 0.01 grams.

The State argued that "the totality of the circumstances suggests [Ruben's] conduct did in fact cause or threaten the harm sought to be prevented" by HRS § 712-1243 and that Ruben had failed to meet his burden to show that the amount of methamphetamine in his possession, along with the attendant

---

[3]    HRS § 702-236 provides:

§ 702-236 De minimis infractions.  (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

(a)    Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense;

(b)    Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(c)    Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.

(2)    The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

circumstances, warranted dismissal as a *de minimis* violation. The State attached a copy of the Honolulu Police Department (**HPD**) Official Report for the scientific testing conducted on the substance recovered from the pipe and a 2002 transcript of testimony by Dr. Kevin Ho (**Dr. Ho**) in another case.

During a July 3, 2018 hearing on the motion, the parties stipulated to the facts of the case as follows:

> THE COURT: . . . Both of you in your declarations essentially recite factual circumstances which are not -- I mean, they basically comport with each other.
> [DEFENSE COUNSEL]: Yes.
> THE COURT: Do we both agree that those are the facts that I can use to consider the relevant circumstances associated with this motion?
> [DEPUTY PROSECUTING ATTORNEY]: Yes, Your Honor.

There was no testimony at the hearing.

In support of his motion, Ruben argued that the amount of methamphetamine he possessed at the time that Officer Keronic observed him with the pipe and lighter was not a "criminal offense worthy of a Class C felony." Ruben acknowledged that, unlike the State, he did not include with his Motion to Dismiss any expert testimony with respect to the pharmacological effects of the amount of residue in the pipe. He argued, however, that the amount is "*de minimis* or it's not" and that his past or future use of the drug was not a relevant consideration. In opposition, the State argued that .01 grams of methamphetamine is not a *de minimis* amount.

Following the arguments by the parties, the Circuit Court granted the motion and dismissed the charge with prejudice. On July 13, 2018, the Circuit Court entered the Dismissal Order, in which it found and concluded as follows, in pertinent part:

Factual Findings

On November 16, 2017, [HPD] Officer Douglas Korenic encountered [Ruben] at Kauluwela Mall, a City and County of Honolulu community park located at 198 North Vineyard Boulevard in downtown Honolulu.

From approximately fifteen feet away, Officer Korenic saw Ruben sitting in a chair within the park.

[Officer Korenic] noticed that Ruben had a small, clear glass cylindrical object with a bulbous end in his left hand and a lighter in his right hand. He then saw Ruben place the pipe and the lighter in a hat on his lap.

Officer Korenic recovered the pipe, which he observed to contain white burnt residue.

No other items typically associated with illicit drug commerce, use or paraphernalia (see HRS § 329-43.5)[4] were recovered.
. . . .

Ruben was not observed to light or smoke the object in the pipe, and there is an absence of evidence that the pipe was hot or warm to the touch, thereby suggesting recent usage.

Ruben was not observed to be under the influence of any illicit substance when he was arrested. He was also not engaged in the commission of any property or violent crime.

Subsequent scientific analysis by a [HPD] criminalist determined that the object within the pipe contained methamphetamine. It weighed .010 grams. There was no analysis as to the quantity of methamphetamine comprising the .010 grams.

. . . .

Legal Conclusions

. . . .

Although Ruben's alleged possession of an object containing methamphetamine in an unspecified amount is ten times the amount at issue in [State v. Viernes, 92 Hawai'i 130, 988 P.2d 195 (1999)], the 1000% increase in the methamphetamine possessed by Ruben totaled only 10/1000th or 1/100th of a gram. Viernes supports an HRS § 702-236 dismissal.
. . . .

The Hawai'i Penal Code quantifies illegal possession by measurement in ounces (or grams) - not tenths of grams, or hundreds of grams, or thousandths of grams. It is clear that under the circumstances, and considering the statutory scheme as a whole, Ruben's possession of .010 grams of a substance containing methamphetamine eclipses the "any amount" element of HRS § 712-1243. Ruben's possession did

---

[4]    HRS § 329-43.5 (Supp. 2018) addresses prohibited acts related to drug paraphernalia.

not actually cause or threaten the harm sought to be
prevented by the law. But even if it did, it did so only to
an extent too trivial to warrant the condemnation of
conviction.
. . . .

The court concludes that under the attendant
circumstances of this case, and considering the Hawai'i
Penal Code as a whole, HRS § 702-236 justifies dismissal in
Ruben's case, where he purportedly possessed 1/100 of a gram
of an object containing an unknown amount of
methamphetamine. Ruben should not be subject to felony
prosecution.

It is clear cut that "[a]ll the relevant
circumstances" must be considered with respect to assessing
a de minimis infraction claim. See, e.g., [State v. Vance,
61 Haw. 291, 307, 602 P.2d 933, 944 (1979)]. Vance and the
cases that followed deemed the ability or inability to use
or sell the narcotic as a critical inquiry. Id. . . .
"[W]ith respect to the amount of drugs possessed, the proper
inquiry in de minimis cases is whether the amount possessed
could produce a pharmacological or physiological effect."
. . . .

The prosecution submitted as Exhibit 2 a transcript of
the 2002 testimony of Dr. Kevin Ho in a related case. The
defense did not submit a transcript, but alluded to the
expert testimony of Dr. George Read [(Dr. Read)], who in
similar cases around the turn of the century testified (for
the most part) in contravention of Dr. Ho.

[fn] 17 In similar motions to dismiss on de
minimis grounds in this court and in other courts,
transcripts encompassing the testimony of Dr. Read
have been received. The appellate courts are also
familiar with the competing views of Doctors Ho and
Read.

The court is uncertain as to the continued reliability
of the aged opinions by these experts, but considers the
expert testimony in its analysis.

The court finds that there is an inability to use or
sell the infinitesimal quantity of the object containing
some methamphetamine within the pipe held by Ruben. In that
there is a lack of evidence as to the quantity of actual
methamphetamine within the pipe comprising the 1/100 gram of
"residue" containing methamphetamine, the court cannot find
that the object within the pipe is capable of producing a
pharmacological or physiological effect.

[fn] 18 It is reasonable to infer that a
methamphetamine user would have consumed the
methamphetamine (or shared or sold it) if the
microscopic traces of methamphetamine would have
resulted in a "high," or had a pharmacological or
physiological effect. Thus, it is reasonable to
conclude that Ruben (or someone else) would have
ingested the barely discernable residue had there been
a pharmacological or physiological effect. It is
unreasonable to suggest that .010 grams of a substance
containing methamphetamine is capable of sale as a
narcotic.

. . . .

> Further, there were not any items typically associated with drug use that were uncovered from Ruben.  While he had a lighter in his hand, there was no evidence that at any time he ignited (or attempted to ignite) the pipe with the lighter.  The pipe was not warm, there were no plumes of smoke or methamphetamine odors, and Ruben was not observed to be under the influence of any illicit drug. . . .  Also, Ruben did not possess any accompanying paraphernalia, such as transparent storage baggies, "scrapers," or other HRS § 329-43.5 related items. . . .  He was also not engaged in drug vending.

(Some footnotes omitted; emphasis added; format altered).

II.  POINTS OF ERROR

On appeal, the State contends that the Circuit Court abused its discretion in granting the Motion to Dismiss by erroneously:  (1) interpreting HRS § 712-1243 and concluding that the critical inquiry is whether the illicit drug was usable or saleable; (2) finding that .010 grams of methamphetamine was an amount incapable of producing a pharmacological or physiological effect; and (3) concluding that there were not any items typically associated with drug use recovered from Ruben.

III. STANDARDS OF REVIEW

"'A court's decision under HRS § 702-236 is reviewed for abuse of discretion.'"  State v. Viernes, 92 Hawai'i 130, 133, 988 P.2d 195, 198 (1999) (quoting State v. Ornellas, 79 Hawai'i 418, 420, 903 P.2d 723, 725 (App. 1995)).  "'The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'"  State v. Kealoha, 142 Hawai'i 46, 55, 414 P.3d 98, 107 (2018) (quoting Allstate Ins. Co. v. Pruett, 118 Hawai'i 174, 179, 186 P.3d 609, 614 (2008)).  "In other words, '[a]n abuse of discretion occurs where the trial court has clearly

exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" Id. (quoting Allstate Ins. Co., 118 Hawai'i at 179, 186 P.3d at 614).

"Before a trial court can address whether to dismiss a prosecution on de minimis grounds, it must first make factual determinations regarding both the conduct alleged and the attendant circumstances, which are reviewed under the clearly erroneous standard." State v. Carmichael, 99 Hawai'i 75, 79, 53 P.3d 214, 218 (2002) (citing Viernes, 92 Hawai'i at 133, 988 P.2d at 198). A finding of fact is clearly erroneous when: "'(1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.'" State v. Sanford, 97 Hawai'i 247, 253, 35 P.3d 764, 770 (App. 2001) (quoting State v. Okumura, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995)).

"A trial court's conclusions of law are reviewed de novo, under the right/wrong standard of review." State v. Kido, 109 Hawai'i 458, 461, 128 P.3d 340, 343 (2006) (citations omitted). "A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." Dan v. State, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (internal quotation marks and citations omitted).

III.  DISCUSSION

    A.    <u>Legal Standard for <i>De Minimis</i> Drug Violation</u>

        The State argues that the Circuit Court erred in applying an incorrect legal standard for its <i>de minimis</i> determination.  Specifically, the State argues that the Circuit Court erroneously interpreted HRS § 712-1243 and improperly applied a useable or saleable quantity standard to the amount of methamphetamine in Ruben's possession to erroneously concluding that his possession of .010 grams of methamphetamine "eclipses the 'any amount' element of HRS § 712-1243."  This argument lacks merit.

        The Hawai'i Supreme Court has held that "the direct and unambiguous language of [HRS § 712-1243] prohibits [the Court] from judicially amending the provision to include a useable quantity standard" and thus "the State must prove only the knowing possession of a dangerous drug in any amount" in order to obtain a conviction.  <u>State v. Vance</u>, 61 Haw. 291, 307, 602 P.2d 933, 944 (1979).  Notwithstanding this holding, a court "may dismiss a prosecution if, considering all the relevant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm sought to be prevented by the law or did so only to an extent too trivial to warrant the condemnation of conviction" pursuant to HRS § 702-236.  <u>Id.</u>; <u>Viernes</u>, 92 Hawai'i at 135, 988 P.2d at 200 ("[C]onduct may be so harmless that, although it technically violates HRS § 712-1243, it is nonetheless <i>de minimis</i> pursuant to HRS § 702-236.").

With regards to the harm sought to be prevented by HRS § 712-1243, the Hawai'i Supreme Court has repeatedly recognized that "Hawaii's drug laws were intended to control the use and sale of illicit drugs." State v. Fukagawa, 100 Hawai'i 498, 504-05, 60 P.3d 899, 905-06 (2002); Sanford, 97 Hawai'i at 256, 35 P.3d at 773; Viernes, 92 Hawai'i at 134, 988 P.2d at 199; Vance, 61 Haw. at 307, 602 P.2d at 944. However, "if the quantity of a controlled substance is so minuscule that it cannot be sold or used in such a way as to have any discernible effect on the human body, it follows that the drug cannot lead to abuse." Viernes, 92 Hawai'i at 134, 988 P.2d at 199. Therefore, "with respect to the amount of drugs possessed, the proper inquiry in de minimis cases is whether the amount possessed could produce a pharmacological or physiological effect." Fukagawa, 100 Hawai'i at 506, 60 P.3d at 907.

Here, the Circuit Court recognized that "the proper inquiry in de minimis cases is whether the amount possessed could produce a pharmacological or physiological effect" and proceeded to address the facts of the case utilizing that standard. Thus, while the Circuit Court may not have accurately described the legal standard for a conviction under HRS § 712-1243, it did not employ an erroneous legal standard for a de minimis determination. See Viernes, 92 Hawai'i at 134, 988 P.2d 415 at 199 ("[u]nder certain circumstances, [a de minimis violation] may, as Vance suggests, trump the 'any amount' requirement of HRS § 712-1243"). Accordingly, the State's first and second points of error are rejected.

10

B.    Whether Ruben's Conduct Warranted Dismissal

The State contends that the Circuit Court erroneously determined that the .01 grams of methamphetamine in Ruben's possession was an amount incapable of producing a pharmacological or physiological effect. Specifically, the State argues that there was no evidence in the record to support this finding and that the Circuit Court relied on evidence not in the record to make its finding. The State also argues that the Circuit Court improperly relied on the "lack of evidence as to the quantity of actual methamphetamine within the pipe," because it was Ruben's burden to demonstrate that the purity of the methamphetamine was less than an amount that would produce a physiological or pharmacological effect.

As noted above, the harm sought to be prevented by HRS § 712-1243 is, *inter alia*, the use of illicit substances and "their sale or transfer for ultimate use." Vance, 61 Haw. at 307, 602 P.2d at 944. As the movant in *de minimis* cases, the defendant bears the burden of proof on the issue and must present evidence that the amount possessed was incapable of producing a pharmacological or physiological effect. State v. Oughterson, 99 Hawai'i 244, 256, 54 P.3d 415, 427 (2002); see also State v. Hironaka, 99 Hawai'i 198, 209, 53 P.3d 806, 817 (2002) (affirming the trial court's denial of defendant's *de minimis* motion to dismiss when the defendant adduced no evidence that the amount of methamphetamine he was charged with possessing was incapable of producing a pharmacological or physiological effect or was not saleable); State v. Balanza, 93 Hawai'i 279, 283-85, 1 P.3d 281,

11

285-87 (2000) (holding that the trial court did not abuse its discretion in denying defendant's motion to dismiss on *de minimis* grounds when his expert witness' testimony was inadmissible). Additionally, "the defendant must address both 'the nature of the conduct alleged <u>and</u> the nature of the attendant circumstances.'" Fukagawa, 100 Hawai'i at 507, 60 P.3d at 908 (quoting HRS § 702-236(1)). Dismissal of a charge without any indicators from the surrounding circumstances constitutes an abuse of discretion. Id.

Here, the Circuit Court appears to have recognized the harm sought to be prevented by HRS § 712-1243 as the use of drugs and their sale or transfer for ultimate use. However, the Circuit Court's finding that the .01 grams of a substance containing methamphetamine in Ruben's possession was incapable of producing a pharmacological or physiological effect[5] was clearly erroneous because it was not supported by the evidence.

In making its finding, the Circuit Court referred to the transcript testimony of Dr. Ho submitted by the State and noted that Ruben did not submit any transcript but "alluded to the expert testimony of [Dr. Read] . . . in contravention of Dr. Ho." (Footnote omitted.) The Circuit Court noted that "[i]n similar motions to dismiss on *de minimis* grounds in this court and in other courts, transcripts encompassing the testimony of Dr. Read have been received." The Circuit Court then stated its

---

[5] More precisely, the Circuit Court found "that there is an inability to use or sell the infinitesimal quantity of the object containing some methamphetamine within the pipe held by Ruben" and stated that it "<u>cannot find</u> that the object within the pipe is capable of producing a pharmacological or physiological effect" due to the lack of evidence as to the quantity of actual methamphetamine within the pipe.

12

uncertainty "as to the continued reliability of the aged opinions by these experts" but stated it would "consider[] the expert testimony in its analysis."

Notably, however, Ruben at no time presented a copy of the testimony of Dr. Read. Ruben also did not present evidence of any specific statements by Dr. Read as to the effect of certain amounts of methamphetamine on the human body. Consequently, the testimony of Dr. Read was not evidence in this case as to the pharmacological or physiological effects of the methamphetamine in Ruben's possession.[6] Ruben presented no other evidence or testimony as to the effects of methamphetamine. The evidence presented by the State includes testimony from Dr. Ho that an amount as low as .002 grams of inhaled methamphetamine could produce a pharmacological effect.

The Circuit Court nevertheless focused on the "lack of evidence as to the quantity of actual methamphetamine within the pipe comprising the 1/100 gram of 'residue' containing

---

[6]     To the extent the Circuit Court was purporting to exercise its discretionary authority to take judicial notice of Dr. Read's conclusions as to the effects of methamphetamine, we note that, pursuant to Hawai'i Rules of Evidence (HRE) Rule 201, judicial notice may only be taken of "adjudicative facts," which are, inter alia, those "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." HRE Rule 201(b)(2). We conclude that the pharmacological and physiological effects of methamphetamine are not facts "whose accuracy cannot reasonably be questioned" in light of the testimony of Dr. Ho. Additionally, "[f]actual allegations, conclusions, and findings, whether authored by the court, by the parties or their attorneys, or by third persons, should not be noticed to prove the truth of the matters asserted, even though the material happens to be contained in court records." Addison M. Bowman, Hawaii Rules of Evidence Manual § 201-5[4] (2016-2017 ed.) (citing Ditto v. McCurdy, 98 Hawai'i 123, 130, 44 P.3d 274, 281 (2002); State v. Kotis, 91 Hawai'i 319, 342, 984 P.2d 78, 101 (1999) (mental health experts' affidavits contained in circuit court file in same case did not qualify for judicial notice)). As the supreme court has recently reiterated, "'[a] distinction must be carefully drawn between taking judicial notice of the existence of documents in the Court file as opposed to the truth of the facts asserted in those documents.'" Uyeda v. Schermer, 144 Hawai'i 163, 172, 439 P.3d 115, 124 (2019) (quoting Kotis, 91 Hawai'i at 342, 984 P.2d at 101).

methamphetamine" for its determination that it could not find that "the object within the pipe is capable of producing a pharmacological or physiological effect."  The Circuit Court did not err in finding that the quantity of actual methamphetamine in Ruben's possession was unknown based on the undisputed fact that no additional testing was conducted on the substance recovered from the pipe.  See Viernes, 92 Hawai'i at 134 n.5, 988 P.3d at 199 n.5.  However, a lack of evidence as to the actual amount of methamphetamine in Ruben's possession does not necessarily support a finding that the amount of the substance containing methamphetamine was incapable of producing a discernible effect on the human body, absent some evidence of the effects of that substance.

It is the defendant's burden of proof on the issue of whether he is entitled to a dismissal of the charge on de minimis grounds, which he may carry "by establishing, within the context of 'considering all the relevant circumstances,' that the quantum of the controlled substance at issue '(1) could not produce any pharmacological action or physiological effect and (2) was not saleable.'"  Oughterson, 99 Hawai'i at 256, 54 P.3d at 427 (emphasis added) (quoting Viernes, 92 Hawai'i at 134-35, 988 P.2d at 199-200).  Accordingly, it was Ruben's burden to present at least some evidence as to the effects of methamphetamine or of the specific substance in his possession containing methamphetamine in order for the record to support a finding that the substance could not possibly produce a discernible effect on the human body.  Cf. Viernes, 92 Hawai'i at 134, 988 P.2d at 199

(relying on the defendant's <u>uncontroverted</u> evidence as to the effects of .001 grams of methamphetamine to support the Circuit Court's finding); <u>see also</u> <u>Fukagawa</u>, 100 Hawaiʻi at 506, 60 P.3d at 907 (recognizing that defendant's expert (also Dr. Read) did not testify that the substance recovered in that case could not produce a pharmacological effect); <u>Hironaka</u>, 99 Hawaiʻi at 209, 53 P.3d at 817 (addressing the defendant's failure to adduce any evidence that the amount of methamphetamine he was charged with possession was incapable of producing a pharmacological or physiological effect or was not saleable).

Moreover, the Circuit Court appears to have also relied on Ruben's status as a purported methamphetamine user to infer that Ruben would have already ingested the substance in his possession if it were capable of producing a "high." However, Ruben did not testify and there was no evidence presented as to his status as a methamphetamine user or that, as a purported methamphetamine user, he necessarily would have ingested any amount of methamphetamine simply because it was in his possession and potentially capable of producing a pharmacological or physiological effect.

Because there was no evidence in the record to support the Circuit Court's finding, it clearly erred. Although the Circuit Court made other findings as to the surrounding circumstances of Ruben's conduct, we cannot conclude that the Circuit Court's inclusion of and reliance on its erroneous

finding was harmless error.[7] See State v. Enos, CAAP-18-0000407, 2019 WL 1923705, *2 (Haw. App. Apr. 30, 2019) (SDO). Accordingly, the Dismissal Order must be vacated.

IV.   CONCLUSION

Based on the foregoing, the Circuit Court's July 13, 2018 Dismissal Order is vacated and this case is remanded for further proceedings.

DATED: Honolulu, Hawai'i, June 21, 2019.

On the briefs:

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Nelson W.S. Goo,
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[7]   We note, as the State argues, that the Circuit Court erroneously stated that "there were not any items typically associated with drug use that were uncovered from Ruben," even though the Circuit Court made findings that Ruben possessed a lighter and pipe. However, as the Circuit Court recited and appears to have relied upon these factual findings in its assessment of the surrounding circumstances, its misstatement was harmless. See Fukagawa, 100 Hawai'i at 506 n.11, 60 P.3d at 907 n.11.